# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZORA ANALYTICS, LLC, a California Limited Liability Company,<br><br>SRIKANTH SAKHAMURI, an individual, CIGNITI, INC., a Texas Corporation, and DOES 1-10 inclusive, | Case No.: 3:13-CV-639-JM (WMC)<br><br>**ORDER GRANTING CIGNITI'S MOTION TO DISMISS WITH LEAVE TO AMEND** |

On November 26, 2012, Plaintiff Zora Analytics, LLC ("Zora") filed a complaint against Srikanth Sakhamuri ("Sakhamuri") in state court. Sakhamuri was served on February 22, 2013 and removed this matter to federal court on March 18, 2013. Zora filed an amended complaint ("FAC") in federal court on April 4, 2013, asserting allegations against an additional defendant, Cigniti, Inc. ("Cigniti") (and together with Sakhamuri, "Defendants"). Cigniti then submitted a motion to dismiss Zora's complaint as it relates to Cigniti pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim on May 1, 2013. For the following reasons, the court GRANTS Cigniti's motion to dismiss with leave to amend.

## I. BACKGROUND

Zora is a California Limited Liability Company with its principal place of business in San Diego, California. Sakhamuri was an independent contractor who provided software services to Zora's clients. Cigniti is a corporation with its principal place of business in Texas.

Zora originally contracted with AnanSys Software, Inc. ("AnanSys") to place software engineers at Zora. On April 1, 2009, AnanSys allegedly entered into a written contract with Cigniti in which Cigniti agreed to provide AnanSys with software engineers for Zora on AnanSys' behalf ("Software Consulting Agreement"). See Dkt. 3, Exh. 1. Zora is not explicitly mentioned in the Software Consulting Agreement, but it does define the term "Client" to refer to AnanSys' clients. See Dkt. 3, Exh. 1. Sakhamuri, a Cigniti employee who was working for Cigniti pursuant to an H-1B visa, was one such software engineer.

The Software Consulting Agreement required Cigniti and its personnel "to abide by the Client's Confidentiality Agreement/[Non-Disclosure Agreement ("NDA")]." See Dkt. 3, Exh. 1. It also contained a non-compete clause which read:

> [Cigniti] agrees that he/she will not perform any services for the client, outside of this contract, during the term of the contract and one (1) year thereafter. The term of the contract is outlined[d] in the "Term" section below. For purpose[s] of this Agreement, "Client" shall be defined as the project manager/division in the location where the Contractor is assigned to work hereunder.

Dkt. 3, Exh. 1.

On April 16, 2009, Zora entered into a written contract to provide the State of Oregon Business Development Department ("OBDD") with Data Warehouse

Implementation.  See Dkt. 3, Exh. 2.  The contract was later extended by amendment five times for $415,000 (November 19, 2009 amendment), $420,000 (December 16, 2009), $420,000 (June 18, 2010), $605,000 (October 14, 2010), and $607,500 (December 10, 2010).  See Dkt. 3, Exhs. 3-7.  Sakhamuri was assigned to work on the OBDD project as Zora's independent contractor.  Zora alleges that the OBDD contract was worth approximately $607,500.  See id. at 4.

On or around May 2011, Sakhamuri allegedly disappeared from a work project for Zora with the National Railroad Passenger Corporation ("NRPC") and did not have further contact with Zora regarding his remaining responsibilities on the OBDD project.  See FAC ¶ 13.  Zora alleges that Sakhamuri did not provide it with any notice or explanation about his departure.  Zora further claims that the value of Sakhamuri's services needed to complete the NPRC project was $150,000.  See id.

On August 10, 2012, OBDD inadvertently sent a work order contract to Zora with Sakhamuri listed as a key person assigned to the contract.  Later, on August 17, 2012, the project manager for OBDD, Jared Cornman, sent an email to Zora and Sakhamuri, which listed Sakhamuri's email address as srikanth@nivas-technologies.com.  See Dkt. 3, Exh. 8.  Neither communication contains email addresses with Cigniti's domain name.

As a result, Zora contends that Sakhamuri breached the terms of the Software Consulting Agreement, and by extension the NDA, by misappropriating Zora's trade secrets, which he acquired while he was serving as an independent contractor for Zora.  The trade secret purportedly involves the process of implementing SAP business management software to improve efficiency and/or to add cost savings to state and local governments.  See FAC ¶ 16.  Zora further

claims that Sakhamuri falsely represented that he was an authorized agent or representative of Zora to the OBDD. As a result, Zora alleges that Sakhamuri, Cigniti, and Nivas Technologies, Inc. ("Nivas") profited from business opportunities originally intended for Zora. Zora estimates that it suffered economic losses of $350,000 in 2012 on the OBDD project and $150,000 in 2013 on the NPRC project.

Accordingly, Zora asserts five claims against Sakhamuri and Cigniti: (1) permanent injunction against Defendants; (2) violation of the Uniform Trade Secrets Act (Cal. Civ. Code §§ 3246-3246.11) against Defendants; (3) breach of written contract against Defendants; (4) violation of the Lanham Act (15 U.S.C. § 1125(A)) against Defendants; and (5) negligent hiring/supervision/training against Cigniti.

**II. LEGAL STANDARD**

To overcome a Rule 12(b)(6) motion, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In evaluating the motion, the court must construe the pleadings in the light most favorable to the non-moving party, accepting as true all material allegations in the complaint and any reasonable inferences drawn therefrom. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003). The court should grant Rule 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A facial challenge to a law does not require further facts to be developed because it only constitutes a question of law. See Fortuna Enters. L.P. v. Los Angeles, 673 F. Supp. 2d 1000, 1003 (C.D. Cal. 2008).

## III. DISCUSSION

### A. Cigniti's Preemption Argument

The California Uniform Trade Secrets Act ("CUTSA") preempts, displaces and supersedes all "claims based on the same nucleus of facts as trade secret misappropriation." K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, 171 Cal. App. 4th 939, 962 (2009) (holding that common law and UCL claims unfair competition claims were preempted because the claims were based on the same nucleus of common facts). As Zora's permanent injunction, breach of contract, Lanham Act, and negligent hiring of an employee claims are all based on the same nucleus of facts as Zora's trade secret misappropriation claim, Cigniti contends that these claims are preempted by CUTSA.

First, the court disagrees that CUTSA can preempt any federal law, relying on the fundamental federalist principle "that state law cannot preempt a federal statute [such as the Lanham Act]." Sign Designs, Inc. v. Johnson United, Inc., 2011 U.S. Dist. LEXIS 43184 (E.D. Cal. 2011) (citing Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 612 (1979)). Zora's Lanham Act claim is based on federal law and thus cannot be preempted by state laws such as CUTSA. As such, the court declines to dismiss Zora's Lanham Act claim based on preemption.

In addition, CUTSA does not preempt all claims related to the misappropriation of trade secrets. CUTSA "identifies three categories of cases – those based on breach of contract, criminal remedies, and anything not based on misappropriation of trade secrets – that are not preempted by CUTSA." First Advantage Background Servs. Corp. v. Private Eyes, Inc., 569 F. Supp. 2d 929, 936 (N.D. Cal. 2008) (citing California Civil Code § 3426.7(b)). CUTSA does

5

not distinguish between certain types of contractually based claims from other claims, so a breach of contract asserted by a third-party beneficiary should still be permissible under CUTSA. With respect to injunctive relief, CUTSA also provides that

> (a) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.
>
> (b) If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.
>
> (c) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

Cal. Civ. Code § 3426.2. Injunctive relief and contract-based claims are therefore explicitly available under the CUTSA, so the court declines to dismiss Zora's breach of contract and permanent injunction claims due to preemption.

Finally, other courts have previously held that employers may be liable for acts of misappropriation committed by their employees. See Allergan, Inc. v. Merz Pharms., LLC, 2012 U.S. Dist. LEXIS 31981 (C.D. Cal. 2012) ("The [defendants] are liable for the acts of misappropriation committed by their employees and former employees."); Language Line Servs., Inc. v. Language Servs. Assocs., LLC, 2010 U.S. Dist. LEXIS 140350, at *3, *12 (N.D. Cal. 2010) (defendant company liable for acts of trade secret misappropriation under CUTSA

committed by individual who "secretly took with him to Defendant" trade secrets of the plaintiff when he left plaintiff to begin working for defendant, "since an act of this nature was generally foreseeable as part of [his] duties to solicit customers for Defendant."); see also Newport News Indus. v. Dynamic Testing, Inc., 130 F. Supp. 2d 745, 748-50 (E.D. Va. 2001) (defendant company may be liable for acts of misappropriation committed by prospective employee who had accepted, but not begun, employment with the defendant company). Thus, the court declines to adopt Cigniti's argument that this claim is preempted by CUTSA. And, in sum, Cigniti's argument that any of the aforementioned claims are preempted fails on all accounts.

### B. Uniform Trade Secrets Act (Cal. Civ. Code §§ 3426-3426.11)

A trade secret is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure and use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). Misappropriation under CUTSA includes acquiring trade secrets through "improper means" or using trade secrets of another that were obtained "from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use … ." Cal. Civ. Code § 3426.1(b). "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. Reverse engineering or independent derivation alone shall not be considered improper means." Cal. Civ. Code § 3426.1(a).

Cigniti first contends that Zora failed to identify its alleged trade secret, the economic value of its trade secret, or its efforts to maintain the secrecy of its trade secret. See MTD at 4-5. Zora counters that "[o]ne who seeks to protect his trade secrets from wrongful use or disclosure does not have to spell out the details of the trade secret to avoid a demurrer to a complaint. To so require would mean that the complainant would have to destroy the very thing for which he sought protection by making public the secret itself." Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 252 (1968). Moreover, Zora contends that "the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." Id. at 253; B. Braun Med., Inc. v. Rogers, 163 Fed. Appx. 500, 505 (9th Cir. 2006) (citing Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244 (1968)).

Zora then argues that it has in fact met this pleading requirement by explaining that its trade secret is the process of implementing SAP business management software to improve efficiency and/or to add cost savings to state and local governments. See FAC ¶ 16. Zora also contends that it had a NDA in place to protect its trade secret and that Cigniti agreed to abide by it when it signed the Software Consulting Agreement with AnanSys. See Opp. MTD at 9.

However, even if the aforementioned information constituted a trade secret, Cigniti claims that mere possession of a trade secret is not sufficient to maintain a claim for misappropriation. See Gibson-Homans Co. v. Wall-Tite, Inc., 1992 U.S. Dist. Lexis 21909, at* 14 (C.D. Cal. 1992) (declining to hold that mere possession, without more, did not constitute misappropriation). Moreover, Cigniti

argues that it "has not been afforded adequate notice as to what misappropriation occurred or improper means were allegedly used." MTD at 7. But Zora explains that Sakhamuri falsely stated that he was an authorized agent of Zora to OBDD, knowingly intercepted a Zora business opportunity, knew of Zora's confidential bidding procedures, and knowingly underbid Zora. Zora further asserts that Cigniti should have been aware of the possible civil liability arising from its Software Consulting Agreement, which included a provision for the preservation of trade secrets.

Here, the court concludes that Zora has adequately pled that it possessed a trade secret and that the trade secret had value, which was reflected in the value of the contract that Zora lost as a result of the alleged misappropriation. However, the court finds that Zora has not adequately pled the details of the NDA, which may or may not have covered the trade secret at issue here and may or may not have been given to Cigniti. The court also finds that Zora has failed to adequately plead Cigniti's involvement with the misappropriation of Zora's trade secret. Zora has not alleged that Cigniti was aware of Sakhamuri's alleged misappropriation of Zora's trade secret or that Sakhamuri was even working for Cigniti at the time of the misappropriation. Indeed, Sakhamuri's email address indicates that he was actually working at Nivas when Zora allegedly became aware of Sakhamuri's misappropriations. Without more, Zora fails to state a claim against Cigniti.

**C. Breach of Contract**

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to

plaintiff." Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas., 116 Cal. App. 4th 1375, 1392 (2004) (quoting Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990)).

"For a third party to qualify as a beneficiary under a contract, the contracting parties must have intended to benefit that third party, and their intent must appear from the terms of the contract." Kirst v. Silna, 103 Cal. App. 3d 759, 763 (1980) (citing Cal. Civ. Code § 1559). "The circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement. The contracting parties must have intended to confer a benefit on the third party." Neverkovec v. Fredericks, 74 Cal.App.4th 337, 348 (1999). However, "[i]t is not necessary for the third party to be specifically named in the contract, but such a party bears the burden of proving that the promise he seeks to enforce was actually made to him personally or to a class of which he is a member." Id. at 348-49.

Cigniti argues that the Software Consulting Agreement was between AnanSys and Cigniti. Specifically, AnanSys hired Cigniti to perform services for AnanSys' client, and all payments for those services were made through AnanSys. Cigniti therefore claims that the client, or Zora, was merely an incidental beneficiary of the Software Consulting Agreement. Cigniti also takes issue with Zora's failure to produce the NDA mentioned in the Software Consulting Agreement.

Zora claims that the contract specifically states that Cigniti was supposed to perform services for AnanSys' clients. See FAC, Ex. 1. Zora contends that AnanSys' clients were the Software Consulting Agreement's class of beneficiaries and that it belonged to that class of beneficiaries. In addition, Zora also claims

that Cigniti directly contacted Zora regarding unpaid invoices and were certainly aware of the identity of AnanSys' client.

The court agrees that Zora is a third-party beneficiary of the Software Consulting Agreement because it concerned the provision of services that Cigniti was supposed to provide on behalf of AnanSys. Cigniti's attempt to describe the contract as being for the benefit of the parties is not convincing given that the contract was for one party to provide services on behalf of another party to a non-party to a contract. This is the very definition of a third-party beneficiary.

Alternatively, Cigniti argues that Zora has not provided the NDA or details concerning the terms of the NDA. Cigniti asserts that there are no facts indicating that Cigniti (or any of the Defendants) even knew of these provisions or even what the trade secrets allegedly were. As a result, Cigniti argues that the FAC does not make clear who actually violated the alleged NDA that was incorporated by reference in the Software Consulting Agreement. Zora attempts to counter Cigniti's arguments by pointing to the Software Consulting Agreement, but does not specify what the terms of the NDA were.

Here, again, the court finds that Zora has failed to adequately plead the terms of the NDA. Determining whether Cigniti has violated a NDA that was incorporated in the Software Consulting Agreement is difficult without at least alleging the NDA's material terms. Nevertheless, Zora may be able to successfully amend its breach of contract claim by referring to the material provisions of the NDA.

**D. Lanham Act (15 U.S.C. § 1125(A))**

Zora alleges that Defendants violated the Lanham Act when Sakhamuri made misleading representations of fact to OBDD to obtain a government contract

from the state of Oregon to benefit himself and his "corporate sponsors." FAC ¶ 44, 45. Under Section 43(a)(1)(A) of the Lanham Act,

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of facts, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Even though Zora alleges this claim against all Defendants, Zora fails to mention Cigniti in its allegations relating to the claim, instead asserting that Sakhamuri acted on behalf of himself and his "corporate sponsors." The term "Corporate sponsor" is not defined in the complaint.

Cigniti argues that Zora's Lanham Act claim against Cigniti fails to state a claim because "Plaintiff has not explained who Nivas is and what its alleged relationship is to Cigniti." MTD at 11. In addition, Cigniti notes that it never received the work order sent to Sakhamuri and Zora, and no evidence indicates that Cigniti was even aware of this work order.

Zora counters that it "alleges two theories: (1) that Sakhamuri as an agent of Cigniti and/or other co-conspirator(s) and/or employer(s) misappropriated Zora's intellectual property; and (2) that Sakhamuri as an agent of Cigniti and/or other

12

co-conspirator(s) and/or employer(s)s was guilty of 'passing off' Sakhamuri's professional services (computer consulting) as one in [sic] the same as Zora's." Opp. MTD at 14.

The court concludes that Zora must further allege Cigniti's role in assisting or encouraging Sakhamuri to violate the Lanham act. Although Zora may yet have a claim, Cigniti's role is not properly identified in the complaint. Zora's attempts to lay out theories clarifying the opaque language in its opposition to Cigniti's motion to dismiss are insufficient to save this claim, but Zora may elect to include these clarifications in an amended complaint.

### E. Negligent Hiring/Supervision/Training

"An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit." Roman Catholic Bishop v. Superior Court, 42 Cal. App. 4th 1556, 1565 (1996) (citing Underwriters Ins. Co. v. Purdie, 145 Cal. App. 3d 57, 69 (1983)). As further explained by the Second Restatement of Agency, "[t]he principal may be negligent because he has reason to know that the servant or other agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. If the dangerous quality of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor." Restatement (Second) of Agency, §213 cmt. d; see also Doe v. Capital Cities, 50 Cal. App. 4th 1038, 1054 (1996) ("Liability is based upon the facts that the employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes."). However, "an employer does not owe a plaintiff a duty of care in a negligent hiring and retention action for an injury or other harm inflicted by a

former employee on the plaintiff even though that employee, as in this case, initially met the plaintiff while employed by the employer." Phillips v. TLC Plumbing, Inc., 172 Cal. App. 4th 1133, 1144 (2009).

Cigniti first contends that Zora's FAC does not allege any facts (e.g. past behavior) indicating that Cigniti knew or should have known that Sakhamuri would cause harm. See MTD at 13. In addition, Cigniti asserts that Plaintiff has provided no facts indicating that Sakhamuri was working for Cigniti at the time and notes that Sakhamuri's email suggests that he was in fact working for Nivas at the time of the allegedly tortious behavior. Moreover, the complaint alleges that Sakhamuri was an independent contractor. Either he was an employee or an independent contractor. Until this is clarified in the amended complaint, the motion to dismiss the negligence claim on the employer-employee theory should be granted.

Zora counters that, pursuant to Sakhamuri's H-1B visa, Cigniti was required to maintain an employer-employee relationship with Sakhamuri even if he was working offsite. Zora further argues that Cigniti was obligated to supervise Sakhamuri's work, especially in light of Sakhamuri being an alien worker who "was unfamiliar with American business ethics, practices and unfair business practices." Opp. MTD at 15. Problematically, Zora cites no law supporting the notion that an employer must maintain an employer-employee relationship and supervise its employee. Equally important, Zora ignores the ability of H-1B visa holders to obtain jobs with new employers and adjust their status.

The court again agrees that Zora has failed to meet the pleading requirements. Zora has not provided the terms of the NDA indicating that it was

trying to protect its trade secret or showing that Cigniti was even aware that Zora had a trade secret. Zora has also failed to plead whether Sakhamuri was working for Cigniti when he allegedly misappropriated Zora's trade secret. If Zora remedies these deficiencies, then it may be able to state a claim against Cigniti.

### F. Permanent Injunction

Under the CUTSA, "[a]ctual or threatened misappropriation may be enjoined." Cal. Civ. Code. § 3426.2. Zora seeks a permanent injunction enjoining Cigniti from using Zora's trade secret for its benefit. Yet, as previously discussed, Zora has failed to adequately plead violation of the CUTSA. Therefore, the court dismisses Zora's permanent injunction claim because Zora has not yet shown the existence of actual or threatened misappropriation of Zora's trade secret. Zora may, however, elect to reassert this claim in its amended complaint.

## IV. CONCLUSION

For the aforementioned reasons, Cigniti's motion to dismiss for failure to state a claim is granted with leave to amend. Zora has until July 15, 2013 to submit a first amended complaint if it so desires.

**IT IS SO ORDERED.**

DATED: June 18, 2013

Jeffrey T. Miller
United States District Judge