# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZORA ANALYTICS, LLC, a California Limited Liability Company,<br><br>SRIKANTH SAKHAMURI, an individual, CIGNITI, INC., a Texas Corporation, and DOES 1-10 inclusive, | Case No.: 3:13-CV-639-JM (WMC)<br><br>**ORDER GRANTING CIGNITI'S MOTION TO DISMISS WITH LEAVE TO AMEND; GRANTING SAKHAMURI'S MOTION TO DISMISS WITH LEAVE TO AMEND** |

On November 26, 2012, Plaintiff Zora Analytics, LLC ("Zora") filed a complaint against Srikanth Sakhamuri ("Sakhamuri") in state court. Sakhamuri was served on February 22, 2013 and removed this matter to federal court on March 18, 2013. Zora filed an amended complaint in federal court on April 4, 2013, asserting allegations against an additional defendant, Cigniti, Inc. ("Cigniti") (and together with Sakhamuri, "Defendants"). Cigniti then submitted a motion to dismiss Zora's complaint as it relates to Cigniti pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim on May 1,

1

2013, which this court granted with leave to amend on June 18, 2013. Zora filed a second amended complaint ("SAC") on July 12, 2013. On August 2, 2013, Cigniti filed a motion to dismiss all claims, and Sakhamuri filed motions to dismiss claims one through four. For the following reasons, the court GRANTS Cigniti's motion to dismiss and Sakhamuri's motion to dismiss with leave to amend.

I. BACKGROUND

Zora is a California Limited Liability Company with its principal place of business in San Diego, California. Sakhamuri was an independent contractor who provided software services to Zora's clients. Cigniti is a corporation with its principal place of business in Irving, Texas.

Zora originally contracted with AnanSys Software, Inc. ("AnanSys") to place software engineers at Zora. On April 1, 2009, AnanSys allegedly entered into a written contract with Cigniti in which Cigniti agreed to provide AnanSys with software engineers for Zora on AnanSys' behalf ("Software Consulting Agreement"). See Dkt. 16, Exh. 1. Sakhamuri, a Cigniti employee who was working for Cigniti pursuant to an H-1B visa, was one such software engineer. Zora alleges that Sakhamuri was a resident of California, although Sakhamuri claims that he was a Texas resident. Zora is not explicitly mentioned in the Software Consulting Agreement, but it does define the term "Client" to refer to AnanSys' clients. See Dkt. 16, Exh. 1.

The Software Consulting Agreement required Cigniti and its personnel "to abide by the Client's Confidentiality Agreement/[Non-Disclosure Agreement ("NDA")]." See Dkt. 16, Exh. 1. It also contained a non-compete clause which read:

> [Cigniti] agrees that he/she will not perform any services for the client, outside of this contract, during the term of the contract and one (1) year thereafter. The term of the contract is outlined[d] in the "Term" section below. For purpose[s] of this Agreement, "Client" shall be defined as the project manager/division in the location where the Contractor is assigned to work hereunder.

Dkt. 16, Exh. 1.

On April 16, 2009, Zora entered into a written contract to provide the State of Oregon Business Development Department ("OBDD") with Data Warehouse Implementation. See Dkt. 16, Exh. 3. The contract was later extended by amendment five times for $415,000 (November 19, 2009 amendment), $420,000 (December 16, 2009), $420,000 (June 18, 2010), $605,000 (October 14, 2010), and $607,500 (December 10, 2010). See Dkt. 3, Exhs. 4-8. Zora assigned Sakhamuri to work on the OBDD project as Zora's independent contractor. Zora alleges that the OBDD contract was worth approximately $607,500. See id. at 4.

Zora also assigned Sakhamuri to National Railroad Passenger Corporation ("NRPC"), dba Amtrak, to perform vital SAP business solutions. Although no contract has been provided to the court, Zora alleges that Amtrak compensated Zora for $150,000 a year. See SAC at ¶ 16.

On or around May 2011, Sakhamuri allegedly disappeared from a work project for Zora with the NRPC and did not have further contact with Zora regarding his remaining responsibilities on the OBDD project. See SAC ¶ 17. Zora alleges that Sakhamuri did not provide it with any notice or explanation about his departure. Zora further claims that the value of Sakhamuri's services needed to complete the NPRC project was $150,000. See id.

On August 10, 2012, OBDD inadvertently sent a work order contract to Zora with Sakhamuri listed as a key person assigned to the contract. See Dkt. 16, Exh. 10, § 5. Later, on August 17, 2012, the project manager for OBDD, Jared Cornman, sent an email to Zora and Sakhamuri, which listed Sakhamuri's email address as srikanth@nivas-technologies.com. See Dkt. 16, Exh. 9. This work order did not contain email addresses with Cigniti's domain name.

Zora contends that Sakhamuri breached the terms of the Software Consulting Agreement by misappropriating Zora's trade secrets, which he acquired while he was serving as an independent contractor for Zora. The trade secret purportedly included "the intellectual property of how to implement SAP business management software to improve the efficiency and/or to add costs savings to state and local governments." See SAC ¶ 20. In addition, Zora gave Sakhamuri access to its confidential bidding procedures, customer contact lists, and intellectual property related to business intelligence solutions, which Zora alleges that Sakhamuri later misappropriated. See id.

Zora further claims that Sakhamuri falsely represented that he was an authorized agent or representative of Zora to the OBDD. Zora alleges that Sakhamuri, Cigniti, and Nivas Technologies, Inc. ("Nivas") were joint venturers, stakeholders, alter egos, and co-conspirators who profited from business opportunities originally intended for Zora. Zora estimates that it suffered economic losses of $350,000 in 2012 on the OBDD project and $150,000 in 2013 on the NPRC project.

Accordingly, Zora asserts six claims against Sakhamuri and Cigniti: (1) two breach of written contract claims against Cigniti; (2) violation of the Lanham Act (15 U.S.C. § 1125(A)) against all Defendants; (3) intentional

interference with prospective economic advantage against all Defendants; (4) unfair competition law ("UCL") claim (Cal. Bus. & Prof. Code §§17200 *et seq.*) against all Defendants; and (5) negligent hiring/supervision/training against Cigniti only.

## II. LEGAL STANDARD

To overcome a Rule 12(b)(6) motion, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In evaluating the motion, the court must construe the pleadings in the light most favorable to the non-moving party, accepting as true all material allegations in the complaint and any reasonable inferences drawn therefrom. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003). The court should grant Rule 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A facial challenge to a law does not require further facts to be developed because it only constitutes a question of law. See Fortuna Enters. L.P. v. Los Angeles, 673 F. Supp. 2d 1000, 1003 (C.D. Cal. 2008).

## III. DISCUSSION

### A. Breach of Contract

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas., 116 Cal. App. 4th 1375, 1392 (2004) (quoting Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990)).

Zora, an alleged third-party beneficiary,[1] asserts two separate breach of contract claims: one against Cigniti for violating the spirit and scope of the non-compete provision in the April 1, 2009 contract; and another claim against Cigniti for failing to refund any payments for unsatisfactory job performance when Cigniti's personnel failed to complete assigned projects, directly competed with AnanSys' client (Zora), and billed for time spent on the job which furthered the interests of Defendants Cigniti and Sakhamuri. Each Defendant's arguments against the breach of contract claims asserted against them are discussed in turn.

### 1. Cigniti

Citing to California Business and Professions Code § 16600, which provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void," Cigniti first argues that the "non-compete provisions are not enforceable in California except in limited circumstances." Cigniti MTD at 6. The only exceptions under California law are when dealing with the dissolution of a partnership or the sale of a business or limited liability company. See id. No exception applies here, so Cigniti asserts that the non-compete agreement is necessarily broad. See id. Zora has not addressed this argument in its opposition. The court agrees that Zora's claim for breaching the non-compete clause of the Software Consulting Agreement is invalid and therefore dismisses this claim.

Next, Cigniti argues that Zora's second breach of contract claim is invalid because Zora "has not pleaded that it had paid any more that should have been

---

[1] In its June 18, 2013 order, the court previously concluded that Zora was a third-party beneficiary of the Software Consulting Agreement according to the facts alleged because the Software Consulting Agreement concerned the provision of services that Cigniti was supposed to provide on behalf of AnanSys.

6

refunded at this point nor has [Zora] pleaded that it had demanded a refund from AnanSys." See Cigniti MTD at 8.  Zora responds by asserting that the contractor's job performance was unsatisfactory, that it was harmed by said unsatisfactory performance, and that the harm is evidenced through discovery of billing records and evidence of Sakhamuri's departure without notice.  See Opp. Cigniti MTD at 8-9.

The court also finds that Zora's second breach of contract claim fails to state a claim.  Simply put, "unsatisfactory job performance" does not constitute a breach of the Software Consulting Agreement by Cigniti, who was not a party to the Software Consulting Agreement and therefore could not have breached it.  Zora must allege, if true, that Cigniti formed a contract and that Cigniti breached a clause of that contract.   The court accordingly dismisses Zora's second breach of contract for failing to plead the basic elements of a breach of contract claim.

### 2.  Sakhamuri

Plaintiff concedes that it has no valid breach of contract claim against Sakhamuri.  See Opp. Sakhamuri MTD at 6.  Therefore, the court grants Sakhamuri's motion to dismiss this claim.

### B.  Lanham Act (15 U.S.C. § 1125(A))

Under Section 43(a)(1)(A) of the Lanham Act,

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of facts, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or

>association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . .
>
>shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Zora alleges that Defendants violated the Lanham Act when Sakhamuri made misleading representations of fact to OBDD to obtain a government contract from the state of Oregon to benefit himself and his "corporate sponsors." SAC ¶¶ 40, 41. Zora further alleges that "Cigniti profited from the misappropriation of the business opportunity by leasing Sakhamuri to a third party, Nivas Technologies, as part of a 'packaged deal' because Sakhamuri would bring OBDD with him as a client to the new lessor of his services—Nivas." See SAC ¶ 41. Zora claims that Sakhamuri's LinkedIn profile, in which Sakhamuri identifies himself as a Cigniti employee. See SAC, Exh. 2. In its opposition to Cigniti's motion to dismiss, Zora explains that it "alleges two theories: (1) that Sakhamuri as an agent of Cigniti and/or other co-conspirator(s) and/or employer(s) misappropriated Zora's intellectual property; and (2) that Sakhamuri as an agent of Cigniti and/or other co-conspirator(s) and/or employer(s)s was guilty of 'passing off' Sakhamuri's professional services (computer consulting) as one in [sic] the same as Zora's." Opp. Cigniti MTD at 10.

### 1. Cigniti

Cigniti argues that Zora's Lanham Act claim against Cigniti fails to state a claim because Zora "has not even described what action Cigniti allegedly took in this misrepresentation." Cigniti MTD at 9. In addition, Cigniti notes that it never received the work order sent to Sakhamuri and Zora, and no evidence indicates

that Cigniti was even aware of this work order.  Cigniti also asserts that Zora has not provided any facts indicating that Cigniti was involved other than a conclusory statement that Cigniti somehow knew that Sakhamuri misappropriated the OBDD contract.  See id.

The court again finds Zora's allegations to be lacking.  Although Zora may yet have a claim under the Lanham Act, Zora has not alleged any role of Cigniti in assisting or encouraging Sakhamuri to violate the Lanham Act.  Zora's claims regarding agency are opaque and insufficient to save this claim, but Zora may elect to include these clarifications in an amended complaint.

**2. Sakhamuri**

Sakhamuri argues that his alleged misrepresentation of himself as an agent does not constitute a violation of the Lanham Act because such claims only reach misrepresentations concerning products or services.  To support this argument, Sakhamuri relies on Monoflo International, Inc. v. Sahm, 726 F. Supp. 121 (E.D. Va. 1989), which found that a sales agent's misrepresentations regarding his status as a company's exclusive sales agent would not tend to falsely represent anything about the quality, nature, or characteristic of any product or service.  See id. at 123.  Although the court conceded that "misrepresentations concerning a party's status or commercial relationships may tend, in other contexts, to mislead or create confusion about a product or service," the court found that the Lanham Act did not apply to false representations concerning the relationship between the two parties.

In addition, Sakhamuri also argues that Zora's allegations "are wholly without merit and lack the requisite factual support."  Sakhamuri MTD at 12.

Without alleging facts, Sakhamuri argues that Zora is merely speculating that he represented himself as Zora's agent.  See Sakhamuri MTD at 12.

Zora argues that it has a valid Lanham Act claim against Sakhamuri because he was "passing off" his professional services as one and the same as Zora's professional services.  See Opp. Sakhamuri MTD at 7.  Zora, however, provides insufficient factual allegations supporting its theory that Sakhamuri and Cigniti conspired to misappropriate Zora's intellectual property.  Unlike Monoflo, Sakhamuri was essentially both salesman and the product itself, thereby satisfying the Lanham Act's requirement that a false representation concern goods or services.

Here, the court finds that Zora has not pled a valid Lanham Act claim against Sakhamuri pursuant to Zora's first "passing off" theory.  The court notes that the work order mentions only Covendis and Sakhamuri.  That OBDD intended to contract with Zora when Zora is not mentioned anywhere in the work order is not clear from the complaint.  The email at issue was sent to a Zora employee, Ciji Anand, as well as two Nivas employees, including Sakhamuri.  Still, nothing in either the work order or email suggests that OBDD intended to contract with Zora or that Sakhamuri had represented himself as Zora's employee.  That he provided OBDD with a non-Zora domain work email suggests that OBDD was likely aware that Sakhamuri was now working for a different employer.  Moreover, these facts do not suggest that Sakhamuri had misrepresented the identity of his employer.

Zora's second theory alleging a conspiracy between Sakhamuri and Cigniti similarly fails.  Zora has alleged insufficient facts about the alleged conspiracy other than that it existed, which cannot serve as the basis for a claim.

//

**C. Intentional Interference With Prospective Economic Advantage**

The elements for intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." Westside Center Associates v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507, 521(1996) (citing Youst v. Longo, 43 Cal. 3d 64, 71 n. 6 (1987); Blank v. Kirwan, 39 Cal. 3d 311, 330 (1985); Buckaloo v. Johnson, 14 Cal. 3d 815, 827 (1975)). For a defendant's actions to be "wrongful," the conduct must be "independently actionable." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1158-59 (2003).

Zora alleges that Sakhamuri and Cigniti knew of Zora's relationship with OBDD. Zora further claims that the Defendants "intended to disrupt [this] relationship by having Sakhamuri pose as an authorized agent for Zora when OBDD sought a contract renewal from Zora." SAC ¶ 47. In addition, Zora alleges that "Cigniti knew of Sakhamuri's plans to disrupt the relationship and benefited by selling Sakhamuri's services to Nivas Technologies with the OBDD contract 'bundled' with Sakhamuri's temporary employment contract as a 'leased worker.'" Id. Zora explains that, as a result, "[t]he relationship between Zora and OBDD was, in fact, disrupted when Zora lost out on the contract renewal, the opportunity for which was concealed by Sakhamuri and Cigniti." SAC ¶ 49.

**1. Cigniti**

11

Here, again, Cigniti argues that its alleged role in the conspiracy is unclear. See Cigniti MTD at 10. Specifically, Cigniti contends that Zora "has made the unreasonable leap, based on two emails that are not addressed to Cigniti and show no indication that Cigniti was even aware of their existence, that Cigniti somehow was in conspiracy with Sakhamuri to sell the contract to Nivas along with Sakhamuri's services." Id. at 10. Zora merely replies that "Sakhamuri, through Cigniti, intentionally misrepresented himself to OBDD to usurp a lucrative government contract from Zora, causing damages to Zora for at least the cost of the contract with OBDD, and subject to proof upon further discovery." Opp. Cigniti MTD at 11. The court finds that Zora, if it is able to, must further allege Cigniti's role in assisting or encouraging Sakhamuri to interfere with Zora's prospective economic advantage. The court cannot determine Cigniti's role from the facts currently alleged by Zora. Accordingly, this claim against Cigniti is dismissed.

### 2. Sakhamuri

Sakhamuri contends that Zora had not adequately pled the elements of an intentional interference with prospective economic advantage claim. First, he argues that Oregon solicited and acceptance of bids for "IT-related" services, and that Zora was not guaranteed to win the next contract. See Sakhamuri MTD at 14.

Next, Sakhamuri argues that Zora had failed to plead that Sakhamuri engaged in an independently wrongful act, which must be wrongful by some legal measure other than the fact of the interference itself. See Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 392-93 (1995) ("[A] plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful 'by

some measure beyond the fact of the interference itself.'"). Sakhamuri asserts that another company out-bidding Zora does not constitute the legal measure on which an impermissible interference with prospective economic advantage can be based. See San Francisco Design Center Assocs. v. Portman Cos., 41 Cal. App. 4th 29, 42 (1995) ("[I]n the absence of prohibition by statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may cut rates or prices, allow discounts or rebates, enter into secret negotiations behind the plaintiff's back, refuse to deal with him or threaten to discharge employees who do, or even refuse to deal with third parties unless they cease dealing with the plaintiff, all without incurring liability.") (quoting A-Mark Coin Co. v. Gen. Mills, Inc., 148 Cal. App. 3d 312, 324 (1983)).

Zora counters only that "Sakhamuri intentionally misrepresented himself to OBDD to usurp a lucrative government contract from Zora, causing damages to Zora for at least the cost of the contract with OBDD, and subject to proof upon further discovery." Sakhamuri MTD at 8. The court agrees misrepresentation of agency is an independently wrongful act that could serve as the basis for an intentional interference with prospective economic advantage claim. However, the court finds that Zora has failed to provide any facts regarding Sakhamuri's alleged misrepresentation. The court therefore dismisses this claim.

**D. Negligent Hiring/Supervision/Training (Against Cigniti Only)**

"An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit." Roman Catholic Bishop v. Superior Court, 42 Cal. App. 4th 1556, 1565 (1996) (citing Underwriters Ins. Co. v. Purdie, 145 Cal. App. 3d 57, 69 (1983)). As further explained by the Second Restatement of Agency, "[t]he principal may be

13

negligent because he has reason to know that the servant or other agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him.  If the dangerous quality of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor." Restatement (Second) of Agency, §213 cmt. d; see also Doe v. Capital Cities, 50 Cal. App. 4th 1038, 1054 (1996) ("Liability is based upon the facts that the employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes."). However, "an employer does not owe a plaintiff a duty of care in a negligent hiring and retention action for an injury or other harm inflicted by a former employee on the plaintiff even though that employee, as in this case, initially met the plaintiff while employed by the employer." Phillips v. TLC Plumbing, Inc., 172 Cal. App. 4th 1133, 1144 (2009).

  Cigniti again contends that Zora's SAC does not allege any facts (e.g. past behavior) indicating that Cigniti knew or should have known that Sakhamuri would cause harm.  See Cigniti MTD at 12.  Cigniti also claims that Plaintiff has provided no facts indicating that Sakhamuri was working for Cigniti at the time and notes that Sakhamuri's email suggests that he was in fact working for Nivas at the time of the allegedly tortious behavior.  Either he was an employee or an independent contractor.  Until this is clarified in the amended complaint, the motion to dismiss the negligence claim on the employer-employee theory should be granted.

  Zora only responds that "Cigniti negligently allowed Sakhamuri's misconduct to occur by failing to supervise and control Sakhamuri, and [that

14

Zora] plan[s] to focus its investigation and discovery to discover the true nature of said liability." Opp. Cigniti MTD at 13.

The court again agrees that Zora has failed to meet the pleading requirements. Zora has not pled any facts indicating that Cigniti knew or should have known that Sakhamuri would act in a certain manner, such as past behavior indicating that he was an unfit employee. Thus, the court dismisses Zora's negligent hiring, supervision, or training claim against Cigniti.

### E.  UCL Claim

To assert a UCL Law claim, a plaintiff must identify an unfair business practice. A claim brought under California Business & Professions § 17200 must also "constitute[] conduct that is 'unlawful, unfair, or fraudulent.'" Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal. App. 4th 638, 645 (2008).

Unfortunately, California's case law on the definition of "unfairness" appears to be inconsistent. On one hand, Bardin v. DaimlerChrysler Corp., 136 Cal. App. 4th 1255, 1260-61 (2006), defines unfairness as a "practice [that] is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." See id. at 1268. To analyze whether a practice is unfair, Bardin requires that courts "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." Id. (citing Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal. App. 4th 700, 718-19 (2001)). Other courts have held that the "unfairness" must be tethered to specific constitutional, statutory, or regulatory provisions. See e.g., Scripps Clinic v. Superior Court, 108 Cal. App. 4th 917, 939 (2003).

Zora alleges that Defendants' material misrepresentations and acts of concealment regarding Sakhamuri's employer are unlawful, unfair, and fraudulent business practices prohibited by the UCL.

### 1. Cigniti

Cigniti argues that Zora has not identified any unfair business practice in which Cigniti has allegedly engaged. The court notes that it has dismissed all other claims alleged against Cigniti in the SAC, so Zora has no basis for asserting a UCL violation based on unlawful conduct. The court further finds that Zora has not identified any other independently unfair or fraudulent business practices. The court therefore dismisses Zora's UCL claim against Cigniti.

### 2. Sakhamuri

Sakhamuri argues that Zora cannot assert a UCL claim against him because the UCL applies to acts that occurred in California. Sakhamuri relies on Sullivan v. Oracle Corp., 51 Cal. 4th 1191, 1209 (2011), which held that the UCL did not apply to wage-and-hour claims by out-of-state employees against a California-based employer even though the decisions regarding wages in that case were made in California. Sakhamuri notes that Zora has not pled any facts indicating that the actions at issue in this matter occurred in California. See Sakhamuri MTD at 17-18. In fact, Sakhamuri claims that he and Cigniti were both Texas residents at the time of the actions allegedly constituting a UCL violation. See id. at 18. Moreover, the customer at issue was the state of Oregon. See id.

Zora responds that he has made a prima facie case for a UCL violation because he has stated a prima facie case for a violation of the Lanham Act. See

Opp. Sakhamuri MTD at 10. Zora does not address Sakhamuri's extraterritoriality argument.

The court finds that Zora has not pled any facts indicating that Sakhamuri's actions occurred in or were at least substantially related to acts that occurred in California. Without such facts, the court concludes that reasoning analogous to that in <u>Sullivan</u> applies and no UCL claim may be asserted. Zora's UCL claim is therefore dismissed.

## IV. CONCLUSION

For the aforementioned reasons, Cigniti's motion to dismiss for failure to state a claim is GRANTED with leave to amend. In addition, Sakhamuri's motion to dismiss is GRANTED. Zora has until October 15, 2013 to submit a second amended complaint if it so desires.

**IT IS SO ORDERED.**

DATED: September 9, 2013

Jeffrey T. Miller
United States District Judge